United States Court of Appeals
Fifth Circuit

**F I L E D**

**February 10, 2005**

**Charles R. Fulbruge III**
**Clerk**

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 03-30343
Summary Calendar

_____

TRAVIS BALLOU; GEORGE BRUMFIELD; JOHN WISE; ANTHONY D. JAMES,

Plaintiffs - Appellants,

versus

RALPH R. MABEY, Etc.; Et al.,

Defendants,

LOUISIANA GENERATING L.L.C.; NRG ENERGY, INC.,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Middle District of Louisiana, Baton Rouge
District Court Cause No. 01-CV-125

_____

Before JONES, BARKSDALE and PRADO, Circuit Judges.

PER CURIAM.[*]

This appeal arises from a dispute between plaintiffs-appellants Travis Ballou, George Brumfield, John Wise, and Anthony D. James and defendants-appellees Louisiana Generating L.L.C. (LaGen) and NRG Energy, Inc. (NRG), regarding allegations

---

[*]Pursuant to 5TH CIRCUIT RULE 47.5, this court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

1

of racial discrimination in the workplace.[1]  After finding no evidence of racial discrimination, the district court entered summary judgment in the defendants' favor.  The plaintiffs challenge that judgment in this appeal.  After considering the plaintiffs' arguments, this court affirms the district court's judgment.

## I.  Background

This dispute began when NRG purchased certain assets from Cajun Electric Power Cooperative, Inc. (Cajun) in a bankruptcy sale for NRG's subsidiary, LaGen.  The purchased assets included two facilities known as Cajun I and Cajun II.  The sale was effective on March 31, 2000.  Pursuant to the purchase, LaGen entered into a memorandum of understanding (MOU) with the International Brotherhood of Electrical Workers and the United Steelworkers of America, adopting certain provisions of the collective-bargaining agreements between Cajun and the two unions.  The MOU obliged LaGen to adhere to the reduction-in-force and layoff provisions found in each of the collective-bargaining agreements in determining which Cajun employees would receive offers of employment from LaGen for bargaining unit positions at the Cajun plants.  Each plaintiff held a bargaining

---

[1]For simplicity, this opinion refers to the plaintiffs-appellants collectively as "plaintiffs" and to the defendants-appellees collectively as the "defendants."  The opinion refers to a single plaintiff as "plaintiff" or uses the particular plaintiff's name.

unit position at a Cajun plant on the March 31, 2000 purchase date; thus, each plaintiff was subject to the provisions of the MOU.

After NRG purchased Cajun I and Cajun II, LaGen restructured its allocation of human resources. As a result of the restructuring, the plaintiffs were left without employment. Believing LaGen's hiring decisions were based on race, the plaintiffs sued LaGen and NRG.

On appeal, the plaintiffs maintain the district court erred in entering summary judgment because genuine issues of material fact exist about whether LaGen's employment decisions were based on race. Because each argument is based on facts particular to each plaintiff, the court addresses each plaintiff individually.

## II. Standard of Review

This court reviews a summary judgment de novo, applying the same standard as the district court.[1] Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.[2] The court views the evidence in the light most favorable to the nonmovant.[3] The nonmovant must go beyond the pleadings and come

---

[1]*See Templet v. HydroChem, Inc.*, 367 F.3d 473, 477 (5th Cir. 2004).

[2]*See Templet*, 367 F.3d at 477.

[3]*See id.*

3

forward with specific facts indicating a genuine issue for trial to avoid summary judgment.[4]  A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmovant.[5]  Summary judgment is appropriate when the nonmovant fails to make a showing sufficient to establish the existence of an element essential to that party's case.[6]

**III.  Burden Shifting in an Employment Discrimination Case**

In an employment discrimination case, the plaintiff bears the initial burden to establish a prima facie case of unlawful discrimination.[7]  To meet this burden, the plaintiff must show that (1) he belongs to a racial minority; (2) he applied and was qualified for a job for which the employer sought applicants; (3) despite his qualifications, the employer rejected him; and (4) after his rejection, the employer continued to seek applications from persons with the complainant's qualifications.[8]

If the plaintiff meets his initial burden and establishes a prima facie case, the burden shifts to the defendant-employer to

---

[4]*See id.*

[5]*See id.*

[6]*Id.*

[7]*See Reeves v. Sanderson Plumbing Prod.*, 530 U.S. 133, 142 (2000); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

[8]*See McDonnell Douglas*, 411 U.S. at 802.

produce evidence of a legitimate, nondiscriminatory reason for the plaintiff's rejection.[9]  This burden is one of production, not persuasion, and involves no credibility assessment.[10]  If the defendant-employer meets its burden of production, the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's reason for the employment decision is a pretext for racial discrimination.[11]

To survive summary judgment, the plaintiff must present documentary evidence that raises a genuine issue of material fact about whether the employer's reason for the challenged employment decision is pretextual.[12]  In demonstrating pretext, the plaintiff retains the burden of persuading the fact-finder.[13] It is not enough for the plaintiff to show that the defendant-employer's stated reason was false.  The plaintiff must present evidence that discrimination was the actual reason for the hiring decision.[14]  The actual reason, however, may be inferred to be discrimination by the falsity of the employer's explanation.  *See*

---

[9]*See id.* at 802.

[10]*See Reeves*, 530 U.S. at 142.

[11]*See id.* at 143.

[12]*See Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 42 (5th Cir. 1996).

[13]*See Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

[14]*See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 516-517 (1993).

*Reeves*, 530 U.S. at 142. Thus, the plaintiff can raise a genuine fact issue and survive a motion for summary judgment by establishing a prima facie case and presenting sufficient evidence to indicate that the employer's asserted justification is false.[15]

**IV. Whether Summary Judgement Was Proper**

**A. John Wise's Claims**

At the time NRG purchased the Cajun plants, John Wise worked as a janitor at Cajun I. LaGen, however, did not offer Wise employment when it took over operation of the facility. Instead, LaGen contracted with B&P Supply Company for janitorial services for Cajun I. Soon after LaGen began operating the plant, B&P Supply hired Wise to provide janitorial services for Cajun I.

Wise maintains that LaGen did not hire him as a janitor because he is black. Wise, however, cannot make out a prima facie case for racial discrimination because he cannot show that he applied, and was qualified, for a janitorial position with LaGen, or that LaGen rejected him for the position.[16] When LaGen began operating Cajun I, it had no janitorial position because it contracted for janitorial services rather than hire a janitor.

---

[15]*See Reeves*, 530 U.S. at 148; *Vadie v. Miss. St. Univ.*, 218 F.3d 365, 373 (5th Cir. 2000).

[16]*See McDonnell Douglas*, 411 U.S. at 802 (setting out the requirements for a prima facie case of unlawful racial discrimination).

6

Thus, LaGen never sought applicants for a janitor.  The position Wise sought never existed.

Even if Wise could establish a prima facie case, Wise failed to present evidence that raised a fact question about LaGen's reason for not hiring him as a janitor.[17]  The defendants presented summary judgment evidence establishing that LaGen decided to contract for janitorial services in order to reduce operating costs.  Notably, the summary judgment evidence also showed that B&P Services already provided janitorial services for Cajun II.  Choosing to contract for janitorial services, rather than hiring Cajun's former janitor, is a legitimate nondiscriminatory reason for not hiring Wise.[18]  Although Wise challenges LaGen's reason for contracting with B&P Services for janitorial services because it did not present evidence of cost-savings, Wise did not present any evidence that raised a fact question about whether contracting for janitorial services was a pretext for racial discrimination.  Because Wise failed to present evidence sufficient to overcome LaGen's nondiscriminatory reason for its employment decision, the defendants were entitled to summary judgment on Wise's claims.

**B. Travis Ballou's Claims**

---

[17]*See Nichols*, 81 F.3d at 42.

[18]*See Furnco Constr. Co. v. Waters*, 438 U.S. 567, 577-78 (1978) (explaining that the defendant-employer must prove that his employment decision is based on a legitimate business consideration and not an illegitimate one such as race).

7

Before NRG purchased the Cajun plants, Travis Ballou worked as one of three plant aides at Cajun I. LaGen decided to operate Cajun I with only one plant aide. LaGen maintains that it did not offer Ballou a plant aide position because Ballou had the least seniority within his bargaining unit. Later when the plant aide position became vacant, LaGen did not recall Ballou for the position. LaGen offered the position to the senior Cajun plant aide, plaintiff George Brumfield. Brumfield, however, turned down LaGen's offer of employment. LaGen then offered the position to Derrick Amar. Amar accepted the offer and became the new plant aide.

On appeal, Ballou maintains that LaGen did not recall him for employment because he is black and that LaGen denied him employment opportunities granted to white employees. The defendants presented summary judgment evidence that LaGen decided to operate Cajun I with only one plant aide and that it did not offer that position to Ballou because he was Cajun's most junior plant aide. The summary judgment evidence also showed that Brumfield was senior to Ballou, and Ballou concedes this point. Thus, the defendants proffered nondiscriminatory reasons for not hiring Ballou initially and for not recalling him when the plant aide position became vacant.[19]

Ballou complains about LaGen's hiring of Amar as its plant

---

[19]See *McDonnell Douglas*, 411 U.S. at 802.

8

aide.  Ballou characterizes Amar as someone who, though African-American, does not appear to be African-American because of his extremely light skin color.  Because Ballou contends Amar resigned from the position within months of being hired because of the way LaGen treated him, he maintains that Amar's resignation raises a fact question about his own treatment.  This argument is baseless.  Amar's resignation does not raise a fact question about LaGen's reason for not hiring Ballou or why LaGen offered the vacated position to Brumfield instead of Ballou.[20]  Thus, Ballou failed to show pretext.

Ballou also complains about two white employees who transferred from Cajun II to Cajun I to fill mechanic positions.  The summary judgment evidence, however, established that Ballou was not trained or experienced as a mechanic.  As a result, Ballou cannot establish a prima facie case for racial discrimination as to the mechanics positions because he cannot show that he was qualified for the positions or that despite his qualifications, LaGen rejected him.[21]  Even if he could make out a prima facie case, the collective-bargaining agreements provide that employees shall be recalled on the basis of seniority from among employees within the classification affected by the reduction in force.  The summary judgment evidence shows that

---

[20]*See Nichols*, 81 F.3d at 42.

[21]*See McDonnell Douglas Corp.*, 411 U.S. at 802.

Ballou was not classified as a mechanic when he worked for Cajun; thus, he had no recall rights to LaGen's mechanic positions. The defendants were entitled to summary judgment on Ballou's claims.

### C. George Brumfield's Claims

Before NRG purchased Cajun I, Brumfield worked as Cajun I's senior plant aide. When LaGen began operating Cajun I, it offered Brumfield a position on its operations line contingent upon Brumfield's qualifying for the higher position of auxiliary operator. Concerned that he could not pass the required test, Brumfield rejected the offer.

On appeal, Brumfield maintains that he presented summary judgment evidence that showed he was treated less favorably than similarly-situated white employees. Brumfield complains that LaGen did not extend conditional offers of employment to white employees. In particular, he complains that LaGen offered two white employees comparable positions without a testing requirement. The defendants presented summary judgment evidence that LaGen required all employees in its operations line to first qualify for the position that was one level higher than the applied-for position. In the case of a plant aide, the position that was one level higher was auxiliary operator. The evidence also showed that although Brumfield once worked at Cajun I as an auxiliary operator, he was voluntarily demoted from the position after Cajun determined his performance was unsatisfactory and he

became a permanent plant aide.  Although the record is unclear about whether LaGen offered Brumfield a position as a plant aide or as an auxiliary operator, as he claims, the record is clear that Brumfield rejected LaGen's offer of employment because he was concerned he would not qualify as an auxiliary operator and he would lose his severance pay.  Thus, Brumfield cannot establish a prima facie case of racial discrimination because he cannot show that LaGen rejected him.[22]  Brumfield complains that LaGen did not prove that a plant aide must be able to perform as an auxiliary operator, but that assertion does not raise a fact question about whether he rejected LaGen's employment offer or whether he was treated less favorably than white employees.

As for the white employees that Brumfield maintains were hired without a testing requirement, the summary judgment evidence showed that those employees were already working as auxiliary operators.  Thus, no need existed for those employees to qualify as auxiliary operators.  That LaGen did not require those employees to test to show that they were qualified as auxiliary operators does not raise a fact question about whether Brumfield rejected LaGen's employment offer or whether he was treated less favorably than white employees.[23]  The defendants were entitled to summary judgment on Brumfield's claims.

---

[22]*See id.* at 802 (setting out the elements of a prima facie case of racial discrimination).

[23]*See Nichols*, 81 F.3d at 42.

11

## D. Anthony James's Claims

When LaGen took over the Cajun plants, Anthony James worked as a warehouseman at Cajun II. Of the seven warehousemen at that facility, only James is black. Although Cajun had seven warehouse positions, LaGen began operation with only two warehouse positions. LaGen claims that it did not offer James one of those positions because he had the least seniority of the Cajun warehousemen. Approximately fourteen months later, LaGen recalled James for a warehouse position.

Although LaGen ultimately employed James as a warehouseman, James maintains that he was treated less favorably than white employees because Cajun transferred a white employee, who served in a warehouse position similar to James's position, to the tool room, depriving James of the opportunity to work in that position. James, however, cannot establish a prima facie case for racial discrimination because LaGen did not reject James from employment while seeking applicants for its warehouse positions.[24] LaGen had fewer warehouse positions than Cajun and James was the junior person of the seven people in his bargaining unit; instead of rejecting James, LaGen complied with the terms of the collective-bargaining agreement and offered the warehouse positions to the two most senior people.

Even if James could establish a prima facie case, the

_____

[24]*See McDonnell Douglas*, 411 U.S. at 802.

12

defendants presented summary judgment evidence that established a nondiscriminatory reason for not hiring James. That evidence showed that LaGen had fewer warehouse positions than Cajun and that James was the most junior person in his bargaining unit. Although James complains about not being hired for the tool room, LaGen's tool room position fell within the maintenance department and James had no seniority in the maintenance department. The white tool room specialist James complains about had seniority within the maintenance department. James failed to raise a fact question about whether LaGen's reason for not hiring him earlier was a pretext for unlawful discrimination, and thus, the defendants were entitled to summary judgment on James's claims.[25]

## V.  Conclusion

Because each plaintiff-appellant failed to either establish a prima facie case of racial discrimination or to raise a fact question about LaGen's reason for not hiring him, the court AFFIRMS the district court's judgment.

AFFIRMED.

---

[25]*See Nichols*, 81 F.3d at 42.